UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

YESFERSON LAZARO GARCIA PURON,

Petitioner,

v.

JULIO HERNANDEZ, et al.,[1]

Respondent.

Case No. 2:26-cv-01428-TLF

ORDER GRANTING PETITION
FOR WRIT OF HABEAS CORPUS

Petitioner Yesferson Lazaro Garcia Puron, a native and citizen of Cuba, is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1 (Petition). He has been detained since June 3, 2025. *Id.*; Dkt. 10 (Decl. of Gary Ingram ("Ingram Decl.") at 2.

On April 27, 2026, petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, through counsel, arguing his continued detention under 8 U.S.C. § 1225(b) without a bond hearing violates his due process rights under the Fifth Amendment to the United States Constitution. *Id.*

Petitioner seeks an order from the Court: (1) directing his release unless, within 14 days, the Government holds a custody hearing where the Government must establish by clear and convincing evidence that petitioner presents a risk of flight or

---

[1] The Court refers to respondents collectively in this opinion as "the Government."

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 1

danger and that no alternative to detention can mitigate any risk that his release would present; if the government fails to meet its burden petitioner must be released on appropriate conditions of supervision, taking into account his ability to pay bond; or alternatively (2) that the Court hold a hearing if necessary and determine that petitioner's detention is not justified because the government has not established by clear and convincing evidence that petitioner presents a flight risk or danger in light of available alternatives to detention; and order petitioner's release with appropriate conditions of supervision if necessary, taking into account petitioner's ability to pay bond; and (3) issue a declaration that petitioner's ongoing prolonged detention violates the Due Process Clause of the Fifth Amendment; and (5) award petitioner attorney's fees and costs.

The Government has filed a return memorandum arguing petitioner's detention is lawful under 8 U.S.C. § 1225(b) and the Due Process Clause of the Fifth Amendment. Dkt. 9. Petitioner, represented by counsel, has filed a response/traverse. Dkt. 12.

The parties have unanimously consented to the jurisdiction of a Magistrate Judge. Dkt. 7. Having considered the parties' submissions, the balance of the record, and the governing law, the petition (Dkt. 1) is GRANTED, as provided below.

BACKGROUND

Petitioner is a native and citizen of Cuba. Dkt. 11 (Decl. of Jordan Steveson ("Steveson Decl.")), Ex. A (Record of Deportable/Inadmissible Alien). On August 17, 2022, petitioner was encountered by immigration authorities near Eagle Pass, Texas. Dkt. 10 (Ingram Decl.), ¶ 3. The Government presents the declaration of deportation officer Gary Ingram who states that immigration authorities determined that petitioner

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 2

was inadmissible under INA § 212(a)(6)(A)(i) (8 U.S.C. § 1182(a)(6)(A)(i)) but due to detention capacity issues petitioner was conditionally paroled into the United States for 60 days to report to ICE for enrollment into the alternatives to detention program ("ATD"). *Id.* ¶ 4. Petitioner was not issued a Notice to Appear ("NTA") at that time. Dkt. 1-1 at 3 (Decl. of Petitioner); Dkt. 1-1 at 3 (Form I-213). Officer Ingram asserts that records indicate petitioner never reported to ICE as directed. Dkt. 10 (Ingram Decl.), ¶ 4.

Petitioner filed an application for relief from removal in November 2022. Dkt. 11 (Steveson Decl.), Ex. A. Officer Ingram states in his declaration that records from the Federal Bureau of Investigation reflect the following: on April 16, 2024, petitioner was arrested for Use of an Anti-Shoplifting Device and for Petit Theft; on November 8, 2024, petitioner was arrested in California for Pimping; on March 17, 2025, petitioner was convicted of driving while license suspended or revoked in Florida. Dkt. 10 (Ingram Decl.), ¶ 5. The record reflects that the Pimping charges against petitioner were dropped. Dkt. 11-1 at 6 (Form I-213); Dkt. 11-2 (Form I-877) at 5. Petitioner also disputes he was convicted of driving while license suspended or revoked stating that the County Clerk in Hillsborough County Florida "has certified on multiple occasions that I was not convicted or charged with a DWLS. County records only show that I had a civil infraction for speeding in January 2025." Dkt. 1-1 at 5 (Petitioner Decl.).

On June 3, 2025, petitioner came to the attention of U.S. Customs and Border Patrol ("CBP") at the Pacific Highway Port of Entry in Washington. Dkt. 11 (Steveson Decl.), Ex. A. The Canada Border Services Agency refused to admit petitioner into Canada under the Safe Third Country Agreement ("STCA"). *Id.* Petitioner states in his declaration that he "decided to visit Canada" but was denied entry into Canada under

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 3

the STCA and he never crossed the border into Canada. Dkt. 1-1 at 3 (Petitioner Decl.). The Government acknowledges that the extent of petitioner's entry or interactions with Canada are unclear. Dkt. 9 at 2.

CBP subsequently inspected petitioner, including performing record checks which showed petitioner's criminal and immigration history. Dkt. 11 (Steveson Decl.), Ex. A. Petitioner was also interviewed by CBP. *Id.*, Exh. B (Record of Sworn Statement). The record of the interview reflects that petitioner stated that he was trying to enter Canada because he did not think he would get residency in the United States. *Id.*

Petitioner was then detained and issued an NTA which reflected he was "an arriving alien" but charged him with removability from the United States pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). Dkt. 11 (Steveson Decl.), Ex. A; Ex. C, (Notice to Appear); Dkt. 10 (Ingram Decl.), ¶ 6. Petitioner was transferred to the Northwest ICE Processing Center in Tacoma, Washington. Dkt. 10 (Ingram Decl.), ¶ 6.

During his immigration proceedings, petitioner requested a continuance on August 4, 2025, to apply for adjustment of status with U.S. Citizenship and Immigration Services. Dkt. 10 (Ingram Decl.), ¶7. On January 8, 2026, petitioner requested another continuance. *Id.*, ¶ 8. On March 2, 2026, an immigration judge ordered petitioner removed to Cuba and denied his applications for relief. *Id.*, ¶ 9; Dkt. 11 (Steveson Decl.), Exh. D (IJ Order). On March 26, 2026, petitioner appealed that decision to the Board of Immigration Appeals ("BIA), and the appeal remains pending. Dkt. 10 (Ingram Decl.), ¶ 9.

DISCUSSION

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 4

A.    Statutory Basis for Petitioner's Detention

The Court notes that the evidence in the record is unclear regarding whether petitioner is detained under 8 U.S.C. § 1226(a) or 8 U.S.C. § 1225(b), yet the parties agree 1225(b) governs petitioner's current detention. Dkt. 9 at 3; Dkt. 1 at 8. The Court will accept the parties' representations and will analyze the petition accordingly.

Title 8 of the United States Code §§ 1225, 1226, and 1231 govern immigration detention. "Where [a noncitizen] falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008).

Section 1225 applies to "applicants for admission"—noncitizens[2] who "arrive[ ] in the United States," or are "present" in the United States but have "not been admitted." 8 U.S.C. § 1225(a)(1). Applicants for admission fall into two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2). *See Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Section 1225(b)(1), applies to, among others, noncitizens initially determined to be inadmissible because of fraud, misrepresentation, or lack of valid documentation. *Id.*  (citing § 1225(b)(1)(A)(i)). Section 1225(b)(2) is broader and "serves as the catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)" (with specific exceptions that neither party argues are applicable here). *Jennings*, 583 U.S. at 287-88 (citing §§1225(b)(2)(A), (B)).

---

[2] The Court uses the term "noncitizen" as equivalent to the term "alien" that is used in the statute. *See Nasrallah v. Barr,* 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

"Normally, noncitizens covered by § 1225(b)(1) are subject to an expedited removal process that does not include a hearing before an Immigration Judge or review of the removal order." *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116 (W.D. Wash. 2019) (citing 8 U.S.C. § 1225(b)(1)(A)(i)). But, where a noncitizen "indicates either an intention to apply for asylum ... or a fear of persecution," the inspecting immigration officer must refer that noncitizen for an interview with an asylum officer. 8 U.S.C. § 1225(b)(1)(A)(ii); 8 C.F.R. § 208.30(d). Thereafter, if the asylum officer determines that the noncitizen has a credible fear of persecution, then the noncitizen "shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii); *Banda*, 385 F. Supp. 3d at 1112.

Under § 1225(b), "the only opportunity for a noncitizen to be released pending a decision on the asylum application is temporary parole 'for urgent humanitarian reasons or significant public benefit.'" *Banda*, 385 F. Supp. 3d at 1112 (quoting 8 U.S.C. § 1182(d)(5)(A)); *see also* 8 C.F.R. §§ 212.5(b), 235.3.

And the "statute does not impose 'any limit on the length of detention' pending a decision on the asylum application and does not authorize bond hearings or release on bond." *Banda*, 385 F. Supp. 3d at 1112 (quoting *Jennings*, 583 U.S. at 296-301). As the Supreme Court in *Jennings*, held, "1225(b)(1) mandates detention 'for further consideration of the application for asylum,' § 1225(b)(1)(B)(ii), and § 1225(b)(2) requires detention 'for a [removal] proceeding,' § 1225(b)(2)(A). The plain meaning of those phrases is that detention must continue until immigration officers have finished 'consider [ing]' the application for asylum, § 1225(b)(1)(B)(ii), or until removal proceedings have concluded, § 1225(b)(2)(A)." *Jennings*, 583 U.S. at 299.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 6

B.      Due Process/The *Banda* Test

The right to be free from physical restraint by the Government is "at the heart of the liberty that [the Due Process Clause of the Fifth Amendment] protects". *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Confinement under this immigration statutory framework applies broadly; it is not limited to "a small segment of particularly dangerous individuals" *Id.* at 691 (quoting *Kansas v. Hendricks,* 521 U.S. 346, 356 (1997)). The procedural protection from unwarranted detention is an administrative proceeding, followed by judicial review. *Id.* at 692.

Even if the statutory terms of § 1225(b) do not require a bond hearing, petitioner's continued detention must still comport with due process. *See Boumediene v. Bush*, 553 U.S. 723, 797 (2008) (holding that habeas corpus applies to detainees who were classified as enemy combatants and held at Guantanamo Bay; "few exercises of judicial power are as legitimate or necessary as the responsibility to hear challenges to the authority of the Executive to imprison a person."); *Wing Wong v. United States*, 163 U.S. 228, 235-237 (1896) (under the Due Process Clause of the Fifth Amendment, temporary confinement is permissible for a noncitizen pending deportation but – compulsory labor, confiscation of property, or other punitive measures are not).

Neither the Supreme Court nor the Ninth Circuit have settled on a test for assessing the constitutionality of prolonged mandatory detention. *Banda*, 385 F. Supp. 3d at 1113.

This district has held that "unreasonably prolonged detention under § 1225(b) without a bond hearing violates due process" *Banda*, 385 F. Supp. 3d at 1106, 1117; the Court reviews the following factors: "(1) the total length of detention to date; (2) the

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 7

likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal." *Id.* at 1106 (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858-59 (D. Minn. 2019)). Where due process requires a bond hearing, the Government must provide clear and convincing evidence to justify the noncitizen's continued detention. *Id.* at 1107.

- Length of Detention

Under the *Banda* analysis, the length of detention is "the most important factor." *Id.* at 1118. Petitioner has been in custody for 12 months.

The Court finds that this factor favors petitioner. *See Banda*, 385 F. Supp. 3d at 1118 (finding this factor favored petitioner and granting bond hearing after 17 months detention under § 1225(b) and collecting cases granting bond hearings after nine, ten, sixteen, and nineteen months detention); *Cardozo v. Bostock*, No. 2:25-CV-00871-TMC, 2025 WL 2592275, at *1 (W.D. Wash. Sept. 8, 2025) (finding this factor favored petitioner and granting bond hearing after 10 months detention under § 1225(b)).

- Likely Duration of Future Detention

The second factor requires consideration of "how long the detention is likely to continue absent judicial intervention; in other words, the 'anticipated duration of all removal proceedings—including administrative and judicial appeals.'" *Banda*, 385 F. Supp. 3d at 1119 (quoting *Jamal A.*, 358 F. Supp. 3d at 859).

Here, on March 2, 2026, an immigration judge ordered petitioner removed to Cuba and denied his applications for relief. Dkt. 11-4 (IJ Order). Petitioner has just

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 8

recently appealed this decision to the BIA and his appeal remains pending. Courts in this District have observed that BIA appeals can take over six months. *See Nguyen v. Scott*, C25-1988-SKV, Dkt. 15, pgs. 3-4 (citing *Toktosunov v. Wamsley*, 25-cv-1724-TL, 2025 WL 3492858, at *5 (W.D. Wash. Dec. 5, 2025)). And if petitioner's appeal to the BIA is denied he has the right to appeal to the Ninth Circuit Court of Appeals. Recent cases have noted it can take approximately 6 to 12 months from the date of the notice of appeal to oral argument and, following argument, most cases take three months to a year for the Court of Appeals to decide the case. *See, e.g., Tavurov v. Noem*, 819 F. Supp. 3d 1209, 1221 (W.D. Wash. February 6, 2026).

While the Court cannot definitively determine the duration of petitioner's future detention, based on the current record, it appears likely petitioner will face many more months and potentially years in detention. *Barraza v. ICE Field Off. Dir.*, No. C23-1271-BHS-MLP, 2023 WL 9600946, at *6 (W.D. Wash. Dec. 8, 2023), *report and recommendation adopted sub nom. Barraza v. United States Immigr. & Customs Enf't Field Off. Dir.*, No. C23-1271 BHS, 2024 WL 518945 (W.D. Wash. Feb. 9, 2024) (cleaned up) (citing the Ninth Circuit website's timeline for appeals and noting that under this timeline a petitioner who filed his petition for review with the Ninth Circuit a few months prior could be facing two years or more of additional time in custody); *Banda*, 385 F. Supp. 3d at 1119 (finding this factor weighed in petitioner's favor where petitioner who had "only recently" appealed the IJ's denial of his case to the BIA faced a process that could "take up to two years or longer"); *Hong v. Mayorkas*, 2:20-cv-1784-RAJ-TLF, 2021 WL 8016749, at *4 (W.D. Wash., June 8, 2021) (finding this factor favored

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 9

petitioner where he faced "an additional 15 to 38 months" in detention because he was at the "earliest stages" of pursuing a petition for review before the Court of Appeals).

The Court finds this factor favors petitioner.

- Conditions of Detention

Third, the Court considers the conditions of detention. "'The more that the conditions under which the noncitizen is being held resemble penal confinement, the stronger the argument that he is entitled to a bond hearing.'" *Barraza*, 2023 WL 9600946, at *6 (quoting *Jamal A.*, 358 F. Supp. 3d at 860). "A claim for punitive detention requires a comparison of the conditions under which civil and criminal detainees 'are held.'" *Ibarra-Perez v. Howard*, 468 F. Supp. 3d 1156, 1173 (D. Ariz. 2020) (citation omitted).

Petitioner is detained at NWIPC. In his declaration in support the petition, petitioner alleges he suffers from migraines and stress and was given the wrong medication at NWIPC which caused half of his face to become paralyzed; he alleges he suffered significant tooth pain for six months until he was finally treated and his molar removed; he alleges for several months he was only fed twice per day and that he finds bugs, paper and hair in his food; he alleges detention officers refer to detainees as "pigs" and "animals"; he alleges he has limited ability to contact and speak to his young daughters in Cuba and is unable to financially support them due to his detention. Dkt. 1-1 (Petitioner Decl.) at 4-5.

The Government contends that petitioner has submitted no documentation regarding his claims of inadequate medical care. Dkt. 9 at 8. But petitioner has filed a

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 10

sworn declaration which the Government does not rebut -- and in his traverse, petitioner submits medical records indicating he had a lower molar cavity. Dkt. 12-2 at 1.

Furthermore, many "courts have [recently] found, detention conditions at NWIPC are 'similar...to those in many prisons and jails.'" *Maliwat v. Scott*, No. 2:25-CV-00788-TMC, 2025 WL 2256711, at *6 (W.D. Wash. Aug. 7, 2025); *Toktosunov*, 2025 WL 3492858, at *5 (W.D. Wash. Dec. 5, 2025) ("Courts in this District have...found that, at this facility, under circumstances similar to that of Petitioner, this factor favors granting a bond hearing."); *Amhirra v. Warden, Nw. Det. Ctr.*, No. 2:25-CV-01376-TL, 2025 WL 3718994, at *7 (W.D. Wash. Dec. 23, 2025) (same); *Doe v. Bostock*, 24-cv-0326-JLR-SKV, 2024 WL 3291033, at *11 (March 29, 2024) (citing cases); *Rahman v. Garland*, 24-cv-02132-JHC-TLF, 2025 WL 1920341, at *4 (W.D. Wash, June 26, 2025) (citing cases).

The Court finds this factor weighs heavily in favor of petitioner.

- Delays in Removal Proceedings

The fourth and fifth factors consider the nature and extent of any delays in the removal proceedings caused by petitioner and the Government, respectively. "Petitioner is entitled to raise legitimate defenses to removal ... and such challenges to his removal cannot undermine his claim that detention has become unreasonable." *Martinez v. Clark*, No. 18-1669, 2019 WL 5968089, at *10 (W.D. Wash. May 23, 2019), *R & R adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019) (citations and internal quotation marks omitted).

Yet Courts should be "sensitive to the possibility that dilatory tactics by the removable [noncitizen] may serve not only to put off the final day of deportation, but also

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 11

to compel a determination that the [noncitizen] must be released because of the length of his incarceration." *Id.* (citations and internal quotation marks omitted).

With respect to the Government, "[i]f immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable.... Continued detention will also appear more unreasonable when the delay in the proceedings was caused by the immigration court or other non-ICE government officials." *Sajous v. Decker*, No. 18-2447, 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018).

Even if "not the result of intentional action on behalf of government officials, th[ese] delay[s] [are] attributable to the Government." *Martinez*, 2019 WL 5968089, at *10 (citing *Sajous*, 2018 WL 2357266, at *11 ("the operative question should be whether the [noncitizen] has been the cause of the delayed immigration proceeding and, where the fault is attributable to some entity other than the [noncitizen], the factor will weigh in favor of concluding that continued detention without a bond hearing is unreasonable")); *Dukuray v. Decker*, No. 18-2898, 2018 WL 5292130, at *4 (S.D.N.Y. Oct. 25, 2018) (weighing delay caused by immigration court in favor of the petitioner)).

The record shows that petitioner has not caused any delays that should be reasonably attributed to him. There is nothing in the record to indicate that petitioner has engaged in dilatory tactics. Although petitioner requested two continuances, the record reflects the first continuance, from August 4, 2025, to January 8, 2026, was to apply for adjustment of status with U.S. Citizenship and Immigration Services. Dkt. 10 (Ingram Decl.), ¶7. While the purpose for the second continuance, requested on January 8, 2026, is not entirely clear from the record, it was brief; on March 2, 2026, an immigration judge ordered petitioner removed to Cuba and denied his applications for relief. *Id.*, ¶ 9;

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 12

Dkt. 11 (Steveson Decl.), Exh. D (IJ Order). Petitioner was entitled to raise legitimate defenses to removal and to the opportunity to properly prepare those defenses and the record does not reflect petitioner has acted in a dilatory manner.

Furthermore, there is no evidence, nor does petitioner argue, that the Government has caused any delays that should be reasonably attributed to it.

Accordingly, the Court finds that the fourth and fifth factors are neutral.

- Likelihood of Final Order of Removal

The final factor involves consideration of "'the likelihood that the final proceedings will culminate in a final order of removal.'" *Banda*, 385 F. Supp. 3d at 1120 (quoting *Jamal A.*, 358 F. Supp. 3d at 860).

The Court declines, at this stage, to speculate regarding the outcome of petitioner's appeal to the BIA, or any potential subsequent appeal to the Ninth Circuit. The Court finds this sixth factor to be neutral.

- Weighing the Factors

In sum, the Court finds that three factors weigh in favor of granting petitioner a bond hearing, and the remaining factors are neutral. Accordingly, petitioner's detention has become unreasonably prolonged and due process requires a bond hearing.

C.    Bond Hearing

When the Court has determined that a detainee has been subjected to mandatory detention under § 1225(b) for an unreasonably prolonged period in violation of due process, the proper remedy is a bond hearing under *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011) where the government bears the burden of proving the detainee is a danger or flight risk by clear and convincing evidence. *See, e.g.*, *Banda*, 385 F. Supp.

3d at 1120; *Cardozo*, 2025 WL 2592275, at \*2-3; *Rahman v. Garland*, No. 2:24-CV-02132-JHC-TLF, 2025 WL 1920341, at \*4 (W.D. Wash. June 26, 2025), *report and recommendation adopted sub nom. Anisur R. v. Garland*, No. 2:24-CV-02132-JHC-TLF, 2025 WL 1919252 (W.D. Wash. July 11, 2025).

The Court finds that petitioner is entitled to a bond hearing with the procedural requirements of *Singh*: there must be a contemporaneous record of the hearing, and the Government bears the burden of proving by clear and convincing evidence that petitioner is a flight risk or danger to the community. *Singh*, 638 F.3d 1196.

Petitioner also argues that the immigration judge must consider ability to pay bond, and whether there are appropriate conditions of supervision that could mitigate any risk of danger or flight that his release would present. Dkt. 1. Regardless of whether the Government meets its burden of proof to show dangerousness or risk of flight by clear and convincing evidence, petitioner has a due process liberty interest in showing (and the IJ considering) whether, if he were allowed bond, he could afford it and whether there are conditions of release that would mitigate any danger and allow the immigration authorities to monitor him and assure his appearance for future actions of the Immigration Court. *See Black v. Decker*, 103 F.4th 133, 145-159 (2d Cir. 2024)[3] (upholding a district court decision requiring the immigration court to consider ability to pay, and potential conditions of release that would ensure his appearance, when setting

---

[3] The First, Second, and Third Circuits have held that a bond hearing is required when mandatory detention under § 1226(c) becomes unreasonably prolonged so as to violate due process. *Black v. Decker*, 103 F.4th 133, 145-159 (2d Cir. 2024); *Reid v. Donelan*, 17 F. 4th 1, 7 (1st Cir. 2021); *German Santos v. Warden Pike County Corr. Facility*, 965 F.3d 203, 212-214 (3d Cir. 2020). The Eighth Circuit has determined that there is no due process violation when detention under § 1226(c) is prolonged if immigration proceedings are ongoing. *Banyee v. Garland*, 115 F.4th 928, 931-934 (8th Cir. 2024).

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 14

a bond amount); *Cantor v. Freden*, 761 F. Supp. 3d 630, 638-640 (W.D.N.Y. 2025) (holding that in determining whether petitioner poses a flight risk, the IJ must consider whether that risk may be mitigated by reasonable conditions of supervision or monetary bond and in determining whether petitioner poses a danger to the community, the IJ also must consider whether that danger may be mitigated by reasonable alternatives to detention); *but see, Ashmuke v. ICE Field Office Director,* No. C23-1592-RSL, 2024 WL 4436949 (WD Wash. October 7, 2024) at *5 (finding *Singh* "does not require the [IJ in conducting a bond hearing] to consider less restrictive alternative to detention in these circumstances").

The petitioner should be allowed to present evidence regarding proposed conditions for supervised release in the community and that posting bond would be financially infeasible. *See M.P.L. v. Arteta,* No. 25-CV-5307 (VSB)(SDA), 2025 WL 2938993 (S.D.N.Y. October 16, 2025) at *5-*7 (analyzing the due process protections and why a finding of non-dangerousness should not be a prerequisite to consideration of ability to pay and possible conditions of release).

**CONCLUSION**

For these reasons, the Court GRANTS the habeas petition (Dkt. 1) as provided below. The Court finds petitioner's ongoing and prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates the Due Process Clause of the Fifth Amendment to the United States Constitution. The Government is directed to:

A.     Hold a bond hearing **to occur within 7 calendar days** of this order.

   1. The bond hearing shall comport with the procedural requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011) – there must be a contemporaneous

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 15

record of the hearing, and the Government bears the burden of proving by clear and convincing evidence that petitioner is a flight risk or danger to the community;

    2.  The Immigration Judge shall allow petitioner to present evidence of financial circumstances and alternative conditions of release that would mitigate any potential dangerousness or risk of flight;

B.  Or, in the alternative, the Government shall immediately release petitioner under appropriate conditions of release.

C.  The parties are directed to file, on or before **June 22, 2026**, a joint status report with the Court regarding the bond hearing and whether petitioner has been released.

D.  The Court will entertain an appropriate post-judgment motion for attorney fees and costs.

Dated this 9th day of June, 2026.

Theresa L. Fricke
United States Magistrate Judge

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 16